UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  <br>        Plaintiff      ) <br>                            ) <br>        v.                   ) <br>                            ) <br> ADAM WILLIAMS,      ) <br>        Defendant    ) | No. 2:08 CR 43 <br> (No. 2:11 CV 453) |

## OPINION AND ORDER

Adam Williams has moved pursuant to 28 U.S.C. § 2255 for his conviction to be vacated. A § 2255 motion allows a person in federal custody to attack his sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. If it can be determined from the motion and the record of prior proceedings that the movant is not entitled to relief, the motion should be denied with requiring a response from the government and without a hearing. RULE 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

After a three-day trial a jury found Williams guilty of four drug offenses in violation of 21 U.S.C. § 841(a)(1) (one count of distributing marijuana, two counts of distributing crack cocaine, and one count of possessing it with intent to distribute it); and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Williams's convictions were affirmed on direct appeal. *United States v. Williams*, 616 F.3d 685 (2010), and his § 2255 motion was timely filed within one year after his petition for *certiorari* was denied. *Williams v. United States*, – U.S. –, 131 S. Ct. 805 (2010).

Williams now argues that his conviction resulted from ineffective assistance of

trial counsel, citing four instances of conduct, and that his appellate counsel was ineffective for failing to raise those issues on direct appeal. The test to determine whether an attorney has delivered ineffective assistance such that a defendant's Sixth Amendment right to counsel has been violated is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test has two prongs. First, the "defendant must show that the performance of counsel fell outside the 'range of competence demanded of attorneys in criminal cases'–i.e., that it 'fell below an objective standard of reasonableness.'" *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption of competence. *Id*.

Second, the defendant must show that he suffered prejudice as a result of his counsel's ineffectiveness. *Id*. In other words, the defendant must demonstrate "a reasonable probability that, *but for* counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The court may address the prongs in whichever order it chooses, and should deny the claim if the defendant has made an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. In addition, while Williams makes multiple allegations in support of his claim that he received ineffective assistance, it must be kept in mind that "ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief. *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v.*

2

*Cone,* 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore,* 126 F.3d 876, 881-84 (7th Cir. 1997)). Thus, while the court addresses each of Williams's arguments individually, it is counsel's aggregate performance that is the determinative issue.

Williams's first argument is his attorney was ineffective for failing to review with Williams, prior to trial, a video recording showing him participating in a controlled buy and for not objecting to that video being shown to the jury. The problem is, Williams in essence has already made this argument on his direct appeal. Williams himself raised his concerns regarding the video during his trial, and he argued on appeal that this court erred by not conducting a full inquiry and possibly appointing him a new attorney. The Court of Appeals held that although this court did err, the error was harmless, because Williams did not receive ineffective assistance of counsel.

First, he could not show that his trial counsel performed incompetently, because counsel thoroughly questioned witnesses about the video recordings, showing his familiarity with them. *Williams*, 616 F.3d at 690. Second, Williams could not show that he suffered any prejudice because any possibility of an acquittal was extremely remote "in light of the fact that the other evidence of Williams's guilt is overwhelming." *Id*. Thus, the Court of Appeals concluded that "Williams cannot satisfy his burden under either prong of the *Strickland* standard." *Id*.

This analysis is dispositive of the issue now. The law of the case doctrine precludes "future iterations of the ineffectiveness claim, even if new evidence is uncovered." *United States v. Lipscomb*, 385 Fed. Appx. 604, 607 (7th Cir. 2010) (citing

*Harris v. United States*, 366 F.3d 593, 595 (7th Cir. 2004)). Even assuming that this court is not absolutely bound by the appellate holding—because Williams's argument on appeal, strictly put, was that this court erred, not that his attorney was ineffective—the appellate analysis of ineffective assistance is dispositive. Just as on his direct appeal, the only thing Williams alleges and argues is that his attorney didn't review a particular recording with him prior to trial; but he has not alleged how that mattered, that is, what would have been done differently, and how the outcome would have been changed, had his attorney done so. Thus, just as the Court of Appeals stated, Williams has not shown any basis for an ineffective assistance claim because his attorney failed to review the recording with him.

Second, Williams argues that his trial counsel was ineffective for failing to object to "double counting" at his sentencing, as was appellate counsel for not raising the issue on his direct appeal. Specifically, Williams argues that he should not have received a two-level increase to the base offense level for his drug offenses pursuant to U.S.S.G. § 2D1.1(b)(1) because of Amendment 599, which changed Application Note 2 (now Note 4) to U.S.S.G. § 2K2.4 to "reinforce[ ] what courts have always known—when a defendant is convicted of a § 924(c) violation and an underlying offense, the defendant's possession of a weapon cannot be used to enhance the level of the underlying offense." *United States v. Diaz*, 248 F.3d 1065, 1106-07 (11th Cir. 2001).

U.S.S.G. § 2K2.4 and Application Note 4, as changed by Amendment 599, are inapplicable to Williams, however, because he was not convicted of violating 18 U.S.C.

§ 924(c)[1] and his sentence was not calculated using § 2K2.4. Instead Williams was convicted of violating 18 U.S.C. § 922(g) (for which U.S.S.G.§ 2K2.1 applies), and applying a two-level increase under U.S.S.G. § 2D1.1(b)(1) to an underlying offense involving a firearm that is the basis for a § 922(g) conviction is not double-counting. See *United States v. Williams*, 527 Fed. Appx. 827, 829 (11th Cir. 2013). Simply put, no impermissible double-counting occurred, and neither trial nor appellate counsel performed deficiently by neglecting to raise this non-issue.

Third, Williams argues that his trial counsel incompetently advised him to testify in his own defense at trial, knowing there was a chance that Williams would then be impeached by his prior statements and actions, and testifying had a detrimental consequence in the form of a two-point increase at sentencing for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Williams introduces this argument, however, by stating that his attorney advised him to testify "over [Williams's] objections." (DE # 93 at 7.) In other words, Williams understood there were possible negative consequences of testifying, and his attorney's advice that he should testify (assuming the truth of Williams's assertion his attorney rendered that advice) was a matter of recommended strategy. The question, then, is whether that advice fell below a minimum level of professional competence.

The answer to that question is plainly that it did not. Williams's past actions,

---

[1] Count 7 of the superseding indictment charged Williams with a § 924(c) violation, but the jury found him not guilty of that charge.

such as sleeping upstairs rather than downstairs, and post-arrest statements as to handling and dealing in drugs, were all evidence in the government's case-in-chief rather than impeachment evidence offered against Williams. While this evidence did have the effect of impeaching his direct testimony, that is because his testimony was largely an attempt to give additional explanations of his past actions and statements, making him appear less culpable. As his defense counsel explained at sentencing in response to each of the reasons asserted to show that Williams had lied during his testimony, none of that testimony was necessarily false. Although the court ultimately found that it was, the risks incurred from offering this testimony did not completely outweigh its potential benefit.

On that issue, as the court explained during sentencing regarding William's testimony about the gun involved (why he had it, where he kept it in relation to where he slept): "this testimony was an attempt to distance himself from the crack cocaine and the firearm that was recovered in an attempt to undermine the government's evidence that the defendant knowingly possessed the firearm and possessed it with intent to distribute the crack cocaine." (DE # 89 at 49-50.) The thing is, that testimony appears to have been given credence by the jury. Although the court viewed it as false, it appears the jury was persuaded by it, because it found that the government had not proved beyond a reasonable doubt that Williams used the gun in furtherance of distributing crack, acquitting him of that charge. Thus, advising Williams to testify regarding these issues was not unreasonable.

In addition to being reasonable advice, this also shows why Williams cannot establish that advising him to testify caused him prejudice. If he had not testified, the government's evidence concerning the gun would have been uncontradicted, and it seems more likely the jury would have convicted him of the § 924(c) violation. With that conviction his base offense level for the drug offenses would not have increased by two levels pursuant to § 2D1.1(b)(1). Presuming as well that it would not have been increased by two points for obstruction of justice, his offense level would have been 28 instead of 32. With a criminal history category of II, the minimum of his guideline range would have been 87 months instead of the 135-month sentence the court did impose using the minimum from the higher range. But the penalty for the § 924(c) conviction is a mandatory additional five-year consecutive sentence, 18 U.S.C. § 924(c)(1)(A)(i), and so even if the court had chosen the minimum of the lower range, Willams's total sentence would have been 147 months, 12 months longer than the sentence he received.[2] In short, the assertion that his counsel's advice to testify was ineffective fails both prongs of the *Strickland* test: it was not a strategic decision falling outside the wide range of professional competence, and even if it were, it cannot be shown to have caused any resulting prejudice.

Fourth, and last, Williams argues that the government violated FED. R. CRIM. P.

---

[2] Williams received a retroactive sentencing adjustment to 108 months when his guidelines range was lowered in 2011 by amendment 750 to a level 30. If his level were decreased to 26, the minimum of his range would be 70 months, and that plus the mandatory 60-month § 924(c) penalty results in a sentence worse by 22 months.

16 by failing to provide, prior to trial, audio recordings of telephone calls between him and the confidential informant, setting up the controlled drug purchases made from him, and that his counsel was "deficient . . . for not requesting and securing the exculpatory evidence." (DE # 93 at 8.) As an initial matter, Williams does not state why he thinks the government violated RULE 16, and nothing in the record suggests that it did. To the contrary, the memorandum of the final pretrial conference indicates that the government had both audio and video tapes and had provided its RULE 16 materials to the defense; when the audio tapes were admitted at trial as government exhibits 1A, 2A and 3A, defense counsel expressed no surprise at their existence.

 Beyond that, Williams's simply saying that he should have listened to the tapes before trial with his attorney because they contained exculpatory evidence doesn't make it so. The tapes were played in court and were inculpatory, not exculpatory, and Williams has not explained what on them (or even in any portion of them that was redacted) might be construed as exculpatory. In addition, assuming that the government did violate RULE 16 and that if his attorney had objected the audio recordings would not have been allowed in evidence, prejudice cannot be established. Even without the preliminary calls setting up the transactions, the confidential informant testified regarding the transactions, and video recordings of the transactions themselves were admitted into evidence (government exhibits 3A-3C), as were the purchased drugs and drugs recovered during a later search of Williams's residence (government exhibits 4A-8A). Assuming that Williams's attorney erred by not obtaining

the audio recordings prior to trial—which, again, appears to be belied by the record—the failure to do so and review them with Williams caused no prejudice.

## CONCLUSION

After consideration of Williams's motion, the court is convinced that it "plainly appears from the motion . . . and the record of prior proceedings" that Williams is not entitled to relief, requiring the summary dismissal of his § 2255 motion.  RULE 4, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Accordingly, Williams's motion pursuant to 28 U.S.C. § 2255 (DE # 93) is summarily **DENIED** and **DISMISSED**. Further, the court **DENIES** the issuance of a certificate of appealability ("COA"). A COA should issue only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists would find it debatable whether the district court correctly resolved the issues or would conclude that those issues are adequate to deserve further proceedings. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). The court believes that the explanation herein for the denial of Williams's motion adequately explains why this standard has not been met.

The clerk shall **ENTER FINAL JUDGMENT** dismissing the parallel civil cause (2:11 CV 453) initiated by the § 2255 motion.

## SO ORDERED.

Date: January 17, 2014

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT